**Rexford Garland CASSIDY,**
**Petitioner,**

**v.**

**SUPERINTENDENT, CITY PRISON FARM, DANVILLE, VIRGINIA,**
**Respondent.**

**Civ. A. No. 73–C–53–D.**

United States District Court,
W. D. Virginia,
Danville Division.

Jan. 20, 1975.

William H. Fuller, III, Commonwealth's Atty., Danville, Va., for respondent.

## OPINION and JUDGMENT

DALTON, District Judge.

This case has been remanded to this court for further consideration by the United States Court of Appeals for the Fourth Circuit. The case was reinstated on the docket by order of this court dated October 25, 1974. Initially the case was summarily dismissed because the allegations appeared to be identical to similar allegations presented to this court in an earlier § 1983 action brought by this same petitioner and dismissed by this court on August 8, 1973, Rexford Cassidy v. Donald R. Blalock, Civil Action 73–29; indeed many of the allegations were identical. However, as the Fourth Circuit pointed out in its Memorandum Decision, four new allegations had been included in the present action, and in between the two actions, petitioner had been released from confinement and the allegations in the present action therefore relate to conditions during petitioner's second incarceration.

This present action was originally filed *pro se* by petitioner on September 11, 1973, and had been transferred to this district from the Eastern District of Virginia. Petitioner was allowed to proceed *in forma pauperis* by order of this court dated September 17, 1973, and was filed as an action brought pursuant to 42 U.S.C. § 1983. Jurisdiction was conferred upon this court pursuant to 28 U.S.C. § 1343(3) and (4). This court ordered the complaint dismissed as repetitious

of the earlier complaint and the case was accordingly summarily dismissed on September 17, 1973.

Preliminarily the court makes certain notations by way of background into petitioner's history of prolific writ writing. Since the present action was filed on September 11, 1973, petitioner has filed at last count six additional complaints under 42 U.S.C. § 1983: Rexford Cassidy v. City Prison Farm Doctor, Civil Action 74–12, ordered dismissed on May 3, 1974; Rexford Cassidy v. Lieutenant Edwards, Danville City Prison Farm, Civil Action 74–33, ordered dismissed on June 11, 1974; Rexford Cassidy v. Acting Assistant Supt., City Prison Farm, Civil Action 74–36, ordered dismissed on June 14, 1974; Rexford Cassidy v. Donald R. Blalock, Supt., Danville City Prison Farm, Civil Action 74–49, ordered dismissed on September 9, 1974; Rexford Cassidy v. Commonwealth of Virginia, Civil Action 74–289, pending; and Rexford Cassidy v. Donald R. Blalock, Supt., City Farm, Danville, Civil Action 74–85, pending. Petitioner has also filed some fifty-nine complaints to the Virginia Crime Commission; all were found meritless. Petitioner has also been less than a model prisoner; since his initial incarceration he has been convicted of escape and assaulting the prison superintendent on November 6, 1974, malicious damage on November 13, 1974, and assaulting a guard on November 18, 1974. He has also been "written up" over 19 times for violations of internal prison regulations ranging from throwing his food on the floor to fighting. In light of the number of suits and complaints, the nature of the allegations, it is apparent to the court that petitioner is utilizing the provisions of the Civil Rights Act as part of a patently vindictive scheme to harass City Farm personnel and law enforcement officers. It is upsetting to this court that so much judicial time and resources have been wasted as a result of these vexatious suits. Nonetheless, the court will proceed to consider petitioner's grievances.

Rexford Cassidy alleges that:

1) He was sent to the Prison Farm before he was sentenced;

2) Inmates must drink from tin cans and eat with plastic spoons;

3) Inmates do not receive enough toilet paper;

4) A sixteen year old juvenile was placed in his cell;

5) He does not get a toothbrush nor toothpaste;

6) Inmates are worked more than eight hours a day and more than five days a week;

7) He has been denied proper medical treatment;

8) He does not get outdoor recreation;

9) Religion is forced upon the inmates;

10) He has been placed in an isolation cell without a fair hearing and there is a bright light shining on him twenty-four hours a day;

11) The Superintendent threatened to beat, strip, and put the petitioner in a straight jacket;

12) Inmates are worked on public jobs in the rain and are driven to work at excessive rates of speed;

13) Inmates are made to work before they are tried and sentenced;

14) Inmates are forced to shave with used razor blades;

15) Inmates are not given a proper diet.

He has not filed any exhibits, documents, nor affidavits to substantiate these assertions. He has filed two "Reply" briefs which are rambling discourses on his life in prison and the Bill of Rights.

Respondent, Donald R. Blalock, has filed through his counsel a motion for summary judgment, his own affidavit, an affidavit by the Danville Commonwealth Attorney, an affidavit by the prison physician, an affidavit by a deputy sheriff, Cassidy's punishment records, Cassidy's medical records, and a

copy of the various complaints Cassidy has made to the Virginia Department of Corrections.

#### A.

Petitioner first alleges that he was sent to the Prison Farm and was forced to work before he was tried and sentenced. He further alleges that inmates generally are forced to work before they are tried and sentenced. The court recognizes that "there is no federally protected right of a state prisoner not to work while imprisoned after conviction even though that conviction is being appealed", Stiltner v. Rhay, 322 F.2d 314 (9th Cir. 1963). Respondent has denied Cassidy's specific and general allegations. On August 31, 1973, Cassidy was convicted of assaulting a minor and was serving an active sentence from that day on, and respondent alleges that "at no time prior to August 31, 1973, was Cassidy forced to work." The court holds that petitioner has not sustained his burden of proof as he has failed to submit any affidavits or other evidence in support of his allegation. Cassidy's general allegation will not be considered by the court as the suit was not brought as a class action and therefore petitioner may only sue for deprivation of his own rights.

#### B.

In his second complaint Cassidy alleges that inmates must drink from tin cans and eat with plastic spoons. The respondent admits that inmates are given aluminum cups without handles and plastic utensils. The Superintendent states that security considerations necessitate this policy and the court can readily understand the rationale: apparently inmates were taking the handles off the cups and using them as weapons. The court holds that Cassidy's allegations do not rise to a constitutional dimension and additionally are justified as necessary prison security practices.

#### C.

In his third allegation Cassidy alleges that he does not receive enough toilet paper and that it is only issued in allotments of 1½ to 2 feet per day. The respondent states that ample toilet paper is supplied. Whatever amount is actually supplied, the court will not deign that a constitutional right is involved and that the amount of toilet paper supplied is an administrative matter for prison officials and not a matter to be considered by a federal court.

#### D.

In his fourth allegation Cassidy alleges that a sixteen year old was placed in his cell which is denied by respondent. Even if the allegation were true, the court does not perceive any deprivation of Cassidy's rights.

#### E.

In his fifth allegation Cassidy alleges that he is denied access to a toothbrush and toothpaste which is denied by respondent. This claim does not rise to a violation of a federally guaranteed constitutional right and the court will not consider it. Once again the allegation is one which belongs within the scope of internal prison operations.

#### F.

In his sixth allegation Cassidy alleges that inmates are worked more than eight hours a day and more than five days a week; however, as Cassidy states in his "Reply" he personally has only worked a fraction of the time, "82 days out of 465" and since this suit is not a class action, the issue is not properly before the court. Nonetheless, respondent has denied the allegation.

#### G.

In his seventh allegation Cassidy alleges that he has been denied proper medical treatment. The respondent denies this allegation and enclosed Cassidy's medical records and an affidavit by the prison physician, Dr. McNeely. The records indicate that Cassidy has been seen by the doctor eleven times, that x-rays have been conducted to determine his condition, that medicine has been prescribed, and that a special diet was advised. In his affidavit Dr. McNeely states that Cassidy refused all the treat-

ment that was advised. While proper medical treatment is a guaranteed right to prisoners, where there is uncontroverted evidence that this treatment has been proffered but refused by the inmate, no constitutional deprivation has occurred.

█ "The prisoner's right is to medical care—not the type or scope of medical care he personally desires." Coppinger v. Townsend, 398 F.2d 392, 394 (10th Cir. 1968).

#### H.

█ In his eighth allegation Cassidy complains that no outdoor recreation is provided. Although most inmates are outside working most of the days, Cassidy refuses most work. The prison does not have security protection outside the main building and Cassidy has escaped once so he is properly considered a security risk. The court holds that the decision to provide *outdoor* recreation is a matter within the discretion of prison administrators.

#### I.

In his ninth allegation Cassidy claims that religion is forced upon the inmates. Respondent states that religious services are held on Sunday for those inmates who want to voluntarily participate. Additionally Cassidy has alleged in his "Reply" that religion is denied inmates and that their religious medals are taken away. Contrary allegations leave the court with the impression that there is no factual substance to Cassidy's allegations concerning religious freedom. Since Cassidy has not submitted any evidence whats. ever and because there is a doubtful quality as to the verity of this allegation, the court holds that Cassidys' pleadings are without merit.

#### J.

█ In his tenth allegation Cassidy claims to have been placed in isolation without a fair hearing and that his cell is flooded with a bright light twenty-four hours a day. In his affidavit respondent avers that Cassidy has refused to work and instead chose to remain in his cell to write writs and complaints. Cassidy has not filed any proof to the contrary, and the court finds as a matter of fact that Cassidy chose to remain voluntarily in his cell. As to being in isolation, Cassidy has had other inmates placed in his cell, but he has complained so bitterly and caused enough trouble that the prison officials placed him in a private cell. He has always had the option to work, but has continually refused to do so. (*See* Rhinehart v. Rhay, . 314 F.Supp. 81 (W.D.Wash.1970)). Respondent admits that lights are kept on in the hallway throughout the night following a security regulation of the Virginia Department of Corrections in order to enable guards to check the cells; however, the light is not so bright as to interfere with the inmates' rest. The court holds that Cassidy chose to remain in a private cell and that the maintenance of night illumination is a matter properly within the scope of prison administration so long as it is not used in a vindictive manner. United States ex rel. Pope v. Hendricks, 326 F.Supp. 699 (E.D.Pa.1971).

#### K.

█ In his eleventh allegation Cassidy claims that the prison superintendent *threatened* to beat, strip, and put him in a straight jacket. Cassidy does not allege that any actions other than a mere threat occurred. Respondent denies making this threat. Until prison officials actually act cruelly, no deprivation of a constitutional right has transpired; harsh words do not amount to a violation of constitutional rights.

#### L.

█ In his twelfth allegation Cassidy claims that inmates are forced to work in the rain and are driven to work at excessive rates of speed. Respondent denies these practices. Cassidy has submitted no proof of his allegation and

since he does not claim in the allegation that he personally has been forced to work in the rain and that he personally has been driven to work at excessive speeds, the allegation is not maintainable by Cassidy.

The thirteenth allegation was previously considered by the court along with the first allegation in subdivision "A".

### M.

In his fourteenth allegation Cassidy claims that he has not been allowed to keep his own razor blades and has therefore been forced to shave with a razor that has been used by other inmates. Respondent admits that pursuant to security considerations inmates are not allowed to keep their own razor blades. This allegation as was the case with many of the previously considered allegations does not rise to a constitutional dimension and properly remains within the determination of prison officials. This court does not sit as a super administrative agency to review every aspect of the daily procedures of prison administration, but rather is limited to redressing specific constitutional violations.

### N.

Petitioner's final allegation complains of the diet which is provided the inmates. He does not allege that he is given a different diet than other inmates, but that too many beans are served. He has made a list of sixty (60) items that are not served on the prison menu including "kool aid" and "brussel sprouts". Prisoners are not entitled to special diets; a prison is only required to provide enough food of nutritional value so that there is a balanced meal. Abernathy v. Cunningham, 393 F.2d 775 (4th Cir. 1968).

After thoroughly considering each of petitioner's allegations, the court finds no merit, no factual substance, and no constitutional deprivations in any of the complaints. For reasons stated in the body of the opinion the court grants

summary judgment to respondent and orders the complaint dismissed and stricken from the docket. Petitioner is advised that he may appeal this judgment to the United States Court of Appeals for the Fourth Circuit within thirty (30) days of the date of this judgment.